| 178 | 215 |
|---|---|
| Case | 2 |
| 208 | 551 |
| d208 | ³553 |

Daugherty Typewriter Company, Appellant, *v.* Kittanning Iron & Steel Manufacturing Co.

*Equity—Preliminary injunction—Nuisance—Inequality of injury.*

On a bill in equity filed by a company engaged in manufacturing typewriting machines to restrain, as a nuisance, the operation of a coke manufacturing plant which injures plaintiff's business, machinery and manufactured products, as well as the health and comfort of the employees thereof, a preliminary injunction will be refused where it appears that the value of the coke works is many times greater than the value of the complainant's plant, and that the granting of a preliminary injunction would do greater injury than the refusal thereof.

*Equity—Equity practice—Injunction affidavits—Conduct of case.*

It is only in clear cases of abuse that the exercise of a trial court's discretion in the ordinary conduct of a case should be interfered with.

The Supreme Court will not reverse a decree refusing a preliminary injunction because the court below declined to consider an affidavit which was not presented by the complainant until after the respondents had read their affidavits and closed their arguments.

Argued June 3, 1896. Appeal, No. 100, Oct. T., 1896, by plaintiff, from decree of C. P. Armstrong Co., refusing preliminary injunction. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity for an injunction.

After respondent's counsel had read their affidavits and closed their arguments complainant presented the affidavit of Joseph Buffington, whereupon the court indorsed upon it the following order:

"And now April 21st, 1896, the within affidavit presented and offered to be read in the hearing for preliminary injunction after respondents had read their affidavits and closed their arguments and the same is now refused to be heard, but directed to be filed among the records of the case for the purpose of showing that the plaintiff has made such offer."

Further facts appear by the opinion of the court below, which is as follows:

The plaintiff company is a corporation organized for the purpose of manufacturing typewriting machines. In the year 1895, a site suitable for this work was selected and a factory erected, which at present consists of two two-story brick buildings, one forty by one hundred feet, and the other twenty by thirty feet, well and substantially constructed and thoroughly equipped with the most modern and highest type of machinery, including a nickel plating outfit and japanning plant. This establishment is situated just outside of the borough of Kittanning and adjoining or contiguous to the coke manufacturing plant of the defendant, being separated therefrom by the public highway and the roadbed of the Allegheny Valley Railway. It is alleged on part of the plaintiff that the present site was selected on account of its altitude, thus avoiding the moisture from the river and low land adjoining the same; and also on account of

the adaptation this site has for obtaining the early morning light and the sunlight late in the evening, thus enabling the employees to operate the machinery rapidly and accurately in aligning and other purposes; and also that this site was selected because of the assurance the plaintiff company had of obtaining adjoining land for the enlargement of the plant, should the same become necessary. It appears also from the bill and the affidavits in support of the granting of a preliminary injunction, that the said company has expended in these improvements and machinery above the sum of twenty thousand (20,000) dollars, and have employed a considerable number of experienced and skillful mechanics, who, together with those who are learning the art of constructing these machines, and other employees, constitute a pay roll numbering fifty-seven, and that the amount distributed in the payment of these employees for their services, is twelve hundred (1200) dollars every two weeks. The plaintiff company has been in business since about 1891, but up until the erection of the factory as above stated, the business was principally in the development of the Daugherty typewriter and establishing the fact that the enterprise would be a commercial success. The first machines manufactured, namely, two thousand, were made under contract. The project of the enterprise in the minds of the stockholders having been considered a success, and they having determined to erect a factory of their own and manufacture on a large scale, sites in different localities for the erection of the factory were offered to the company. The site above referred to having been selected, the ground, consisting of one acre, was donated to the company, together with about $4,000 of money subscribed by the citizens of Kittanning and vicinity. The plaintiff company began the manufacture of machines in its present factory about the last of August, 1895, and has been in constant operation since, working part of the time both day and night. It is alleged on the part of the plaintiff that the business is a large one, and bids fair to attain very large proportions; that the company upon the opening up of its factory began the manufacture of a lot of five hundred machines; and up to this time has completed and sold about one hundred and thirty of that number, being all that have been completed; that the remainder of said lot of five hundred, as well as a second lot of one thousand machines,

the manufacture of which was commenced last fall, are now in the process of completion, and have reached an advanced stage in the work; also, that the sales of the machines have been increasing steadily, and that the company is now in arrears in its orders about one hundred and twenty-five machines for immediate delivery, and has contracts for future delivery of machines during the current year to the amount of about two thousand; that the board of directors of the company have authorized the manufacture of three thousand machines for the ensuing year commencing the 1st of April; that the operations of the company have so far progressed that at the present time it is turning out six or seven machines per day, with the expectant increase to the amount of ten per day within the next month; that the orders in possession of the company embrace machines for this country, and contracts for large numbers for Russia, Germany, France, India and South America, and that for all of said trade the company have agents to handle and sell its machines, and said agents have invested a large amount of capital in said business; and that a considerable number of machines to go abroad are pressing for immediate shipment. Also, that the company has a large number of efficient agents throughout the United States procured and selected at large cost and labor expended and who will be a loss to the company if it is unable to supply them with machines to meet their present demand; that the company has expended during the last three years the sum of $6,000 and upwards in advertising, and is under contract for a large amount of advertising for the present. These are the facts as averred and set forth in the plaintiff's bill and supported by the affidavits presented; and we state them to show the alleged status, progress and condition of the plaintiff company.

The defendant company is also a corporation, and was incorporated under the laws of this commonwealth on the 25th day of June, 1894, under the corporate name of the Kittanning Iron & Steel Manufacturing Company; it is the successor and purchaser of the Kittanning Iron Company, Limited, which was organized in 1879, and the works and location of both of said companies' plant is identical.

The defendant company's plant consists of a blast furnace of the capacity of nine hundred tons of metal per week; of a roll-

ing mill consisting of thirty-three puddling furnaces, with the necessary boilers and machinery used in connection therewith; also a coal breaker and washer with boilers and engines, and a coke plant consisting of sixty-six ovens. The coke ovens, breaker and washer were erected in the year 1880, at a cost of thirty-five thousand ($35,000) dollars; and the plant is of that value at the present time. The blast furnace with the improvements and additions, represents the value of about four or five hundred thousand dollars. The nucleus of this plant, which now consists of the rolling mill, the blast furnace, the coke ovens, and washer and breaker, had its beginning about forty-five years ago, and has been in operation, with intermissions, under different managements, up until the present time Up until the year 1879, the plant consisted of the rolling mill alone. In that year the erection of the blast furnace was begun, which was immediately followed by the construction of the coke manufacturing plant. At the time the iron plant was first established it was quite beyond the improved and built up portions of the town. At the time of the erection of the blast furnace and the coke ovens that portion of the borough between the rolling mill and what has already been improved was pretty well built up; at the present time the lots are pretty generally occupied by dwelling houses, and a considerable number of houses have been erected on land near to the defendant company's plant on the territory outside of the limits of the borough.

It is contended on the part of the plaintiff that the defendant company should be restrained by a preliminary injunction, afterwards to be made perpetual, from the operation of their coke manufacturing plant, for the reason that the ovens of said plant discharge great volumes of smoke, of heat and of highly sulphurous and noxious vapors, which said by-product and vapors roll up the hill and completely envelop the works of the plaintiff company, and that they permeate and fill the same even when the windows are closed; that by reason of such by-product, sulphurous noxious vapors and smoke entering the factory of said plaintiff interfere with the operation of their works and tarnish and seriously affect the machinery and tools of the plaintiff, also the dies and fixtures which are required to be kept in a clean and polished condition for efficient work, thus ·

destroying the value not only of the machinery of the plaintiff, but rendering its manufactured work unfit for sale and shipment.

From all the circumstances and facts surrounding this case, should the defendant company be interfered with in the use of their property, before a full hearing and determination of the case? The manufacture of coke is a legitimate pursuit, and in this case is carried on as a constituent part of the iron plant of defendant. From the facts so far as developed, we cannot but conclude that plaintiff company suffers at least some injury and damage in the operation of its works, not only to the machinery and manufactured product, but also to the health, comfort and the efficient work of the employees thereof; and because of this plaintiff contends that it will suffer loss in its contracts with agents employed to sell the machines, and will not be able to reap the benefit it should from the amounts invested in advertisement. If the injury and damage done to the machinery, the manufactured product, and to the health, etc., of the operators, be not sufficient of itself to move the conscience of a chancellor to interfere, we cannot see how the prospective sales dependent upon the energy and efficiency of the agents and the efficacy of advertisements, can be added to counteract and remove any doubt the chancellor might have. We do not dispute the authorities cited by plaintiff company in support of its application, nor shall the statements of facts herein made be prejudicial to the rights of either party after answer made and final hearing had. Nor do we base our conclusion upon the fact that the plaintiff came near and in proximity to the plant of the defendant, long after it had been established and in operation, as the authorities cited by plaintiff fully sustain the principal contended for in this regard, that it had the right to select this site and use it for the purpose it is now used; and if injured or damaged by defendant in the use and occupation of its plant there is a remedy—but shall it be by equity or law. It may be said that it can be only by equity—that law will not furnish an adequate remedy because of the continuance of the nuisance and the multiplicity of suits required to recover for damages sustained; and this may in a great measure be correct; but we must not lose sight of that principle that in equity a decree is not of right but of grace; and where from the facts submitted it would appear to the conscience of a chancellor that

a decree enjoining would do greater injury than a refusal thereof, is it not the duty of a chancellor to refuse the preliminary injunction and preserve the status of the parties until final hearing. In this case, both sides by the affidavits submitted claim irreparable injury; the plaintiff if injunction be not granted; the defendant if it be granted; and the persons making these affidavits on both sides as to irreparable injury are men of excellent repute and good judgment, and well known to us.

We therefore, from all the facts as gleaned from the bill, the affidavits and counter affidavits as applicable to the law governing such cases, are constrained to refuse the application.

And now April 25, 1896, preliminary injunction is refused.

*Errors assigned* were (1) decree of the court; (2) refusal to consider affidavit of Joseph Buffington, offered by complainant.

*W. D. Patton* and *M. F. Leason*, with him *George A. Jenks*, for appellant.—The plaintiff's bill discloses such damage and injury, and their right to relief is so clear, that under the authorities and facts the plaintiff is entitled to an injunction: Penna. Lead Co.'s App., 96 Pa. 123; Richards's App., 57 Pa. 105; Evans v. Fertilizing Co., 160 Pa. 214; New Castle v. Raney, 130 Pa. 561; Bispham's Principles of Equity, (4th ed.), 499; Howell v. McCoy, 3 Rawle, 269; Smith v. Phillips, 8 Phila. 11; Tipping v. Smelting Co., L. R. 1 Ch. Appeal Cases, 65; Brady v. Weeks, 2 Barbour, 157; Catlin v. Valentine, 38 Am. Dec. 567; 1 Wood on Nuisance, (3d ed.), secs. 554, 555, 556; Bispham's Prin. of Equity, (4th ed.), sec. 442; Easton Pass. Ry. v. Easton, 133 Pa. 505; Poterie Gas Co. v. Poterie, 153 Pa. 10.

*J. B. Neale, Ross Reynolds* and *J. H. McCain*, of *McCain & Christy*, for appellee.—The injunction was properly refused: Langolf v. Seiberlitch, 2 Pars. 71; Beach's Eq. Jur. 646; Bell v. R. R., 25 Pa. 171; Carr v. Wallace, 7 Watt, 400; Chapman v. Chapman, 59 Pa. 214; Carlisle v. Cooper, 6 C. E. Green, N. J. 591; Williams v. Jersey, 1 Craig & Phillips, 91; 2 Beach on Injunctions, 1062; Orne v. Freidenburg, 143 Pa. 501; Gatzmer v. St. Vincent School, 147 Pa. 313; Ocum Co. v. Sprague Co., 34 Ct. 529; Raritan Co. v. Veghte, 21 N. J. Eq. 463;

McKellip v. McIlhenny, 4 Watts, 317; Strickler v. Todd, 10 S. & R. 74; Rerick v. Kern, 14 S. & R. 267; Shwartz v. Shwartz, 4 Pa. 353; Wier's App., 74 Pa. 241; Robb v. Carnegie, 145 Pa. 324; Evans v. Fertilizing Co., 160 Pa. 209.

PER CURIAM, October 5, 1896:

In any view that can be reasonably taken of the facts presented to the court below by the bill, affidavits, counter affidavits, etc. in this case, we are all of opinion that there was no error in refusing to grant the preliminary injunction. Nor do we think the learned court erred in refusing to consider the affidavit referred to in the second specification. As shown by the record, it was not presented until " after respondents had read their affidavits and closed their arguments." According to the orderly course of procedure, that was too late; and, in the absence of anything to show the contrary, the presumption is that no satisfactory reason was given for the omission to offer it in time. But, aside from that, there appears to be nothing in the affidavit in question that could have had the effect of producing a different result. It is only in clear cases of abuse that the exercise of a trial court's discretion, in the orderly conduct of a case, should be interfered with. This is not such a case.

It is neither necessary nor proper that we should now intimate any opinion as to the merits of the case generally. It goes back for further proceedings—possibly for final hearing on bill, answer and full proofs. A materially different state of facts may then be presented. We therefore adhere to our general rule in appeals from interlocutory decrees, and merely hold that, as presented to the court below, the case is not one that would have justified a preliminary injunction.

The decree is therefore affirmed and appeal dismissed, with costs to be paid by the plaintiff.